# Max Ams, Inc., v. Barker.

March 26, 1943.

Woodward, Dawson & Hobson for appellant.

Dodd & Dodd for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 25, 1933, A. M. Anderson, receiver of the National Bank of Kentucky, filed an action in equity in the Jefferson circuit court, chancery branch, first division, against the Goodwin Preserving Company, a Kentucky corporation, in which plaintiff sought the appointment of a receiver to take charge of and manage

and operate, etc., the property of defendant, which consisted of real property upon which was located its manufacturing plant, and machinery therein; also other assets, all located in the city of Louisville. The petition alleged an indebtedness of more than $48,000 owing by defendant to the bank of which plaintiff was receiver, and that it was indebted to other creditors in large amounts aggregating more than or equal to its entire assets and was, therefore, insolvent. Four days prior to the filing of that petition—and in anticipation thereof, as well as in accordance with a mutual understanding—a resolution was passed by the directors of defendant consenting that such proceedings might be had, and agreeing to the relief asked in the later filed petition. After it was filed the corporation answered consenting thereto ''and prays that this court issue such order as may be necessary, or orders, in the premises for the protection of the interest of creditors and stock holders of said corporation.''

Upon submission, and with the consent of all parties, the court entered judgment reciting that both parties appeared by counsel and that ''Thomas A. Barker be and he is hereby appointed receiver of all the property and assets, real and personal, of the defendant, Goodwin Preserving Company, including the real estate in the City of Louisville belonging to said defendant, and all brands and contracts, books and papers, accounts, records, cash on hand or in bank, and all rents, issues and profits arising from said assets, with authority *to sell* or lease, *with the approval of the Court,* any or all of said assets or property.'' (Our emphasis). The receiver took charge of the property after qualifying as such, and managed its operation thereafter for nearly ten years, making periodical reports to the court, which on January, 1943, showed that the defendant company did not have and the receiver could not provide for sufficient capital to operate the business which he had attempted to correct during his long service as receiver, but had been unable to do so. On that day he and the plaintiff in the action filed amended petitions in the cause setting out the situation as above described, and prayed for an order of sale of the property in receivership for the satisfaction, or pro tanto satisfaction, of its indebtedness, since it had been demonstrated that its operation by the receiver could not accomplish that result, and in the meantime the machinery—being the largest item

—was decreasing in value. The business of the defendant was the preserving of fruits and pickling of vegetables, and it had built up a valuable good will on account of the quality of its product; but was nevertheless unable to acquire sufficient unincumbered capital to operate its business successfully.

Just prior to the application to the court the receiver had procured a number of bids or offers by prospective buyers of the property, which he disclosed to the court. Attorneys for the defendant, and of the movants for an order of sale, were present at the hearing and the court sustained the motion and directed the receiver to offer for sale the property, including, of course, the real estate whereon the plant of defendant was located, on Monday, the first day of February, 1943, at 11 o'clock A. M., in the Directors Room of the Louisville Trust Company, which presumably was also the office of the receiver. It directed that he first give notice in the newspapers published in Louisville of the directed sale, and to explain to those who submitted bids that they might alter them as to price and directed the receiver to then accept the highest and best one, and report his actions to the court. The appellant raised its bid to $161,-000, which was $1,000 higher than the next best bid. The receiver then reported his actions to the court, but appellant, the accepted bidder, declined to comply with his bid on a number of grounds which he claimed to be jurisdictional ones affecting the validity of the court's orders, both in the appointment of the receiver as well as the one ordering the sale.

His objection was based on a report made to him by the Louisville Title Company of Louisville, to whom he had applied for a contract insuring the title to the real property, but which it refused to enter into because of the alleged jurisdictional grounds made by the bidder in his response to the rule issued against him to show cause why he should not comply with his bid. In the meantime appellant, as the accepted and reported bidder, filed an amended response in which it was stated that it would accept title to the property and comply with its bid "in the event the Court of Appeals of Kentucky determines that Thomas A. Barker, receiver herein, can convey to it a good fee simple title, marketable title to such assets." On submission of the question thus raised the chancellor filed an opinion reciting the

above facts, and his interpretation of the law applicable thereto, and came to the conclusion that the motion of the movants should be sustained, which was followed by a judgment holding the response of appellant insufficient, and making the rule absolute, from which appellant prosecutes this appeal. Neither the corporation nor anyone interested in its property or affairs, including creditors, made or presented any objections to that judgment, nor do they do so in this Court. On the contrary, they express their satisfaction and consent to the receivership orders made by the court. It will, therefore, clearly appear that the only question before us is: Whether or not the court possessed "jurisdiction" to enter the order appealed from, as well as the order appointing the receiver, and at the same time possessed jurisdiction of the person of defendant as owner of the property placed in receivership?

The word "jurisdiction," as sought to be invoked by appellant in his response to the rule issued against him, has a much broader significance as affecting judgments of courts than the word "authority" of the court to render the particular judgment complained of. A court of competent jurisdiction over the subject matter and of the parties may not possess authority, under the facts presented, to render the *particular* judgment complained of, but in that case only an error has been committed correctable by appeal if the parties see proper to pursue that course. But any attempt of a court to adjudicate a case when it has no jurisdiction of the *subject matter* of the action, or of the person of the parties, is void and of no effect.

It would seem to be scarcely necessary to attempt to fortify what we have just said by authorities, since the above statements are fundamental in the law. As applied to the appointment of receivers jurisdiction of courts of equity to do so is one of the prominent functions of equity practice. We will, therefore, cite but one reliable authority in substantiation thereof, which is 23 R. C. L. 9, Section 3, under the subject of "Receivers." That text says: "The appointment of a receiver is part of the jurisdiction of equity, and is based on the inadequacy of the remedy at law, being intended to prevent injury to the thing in controversy, and to preserve it, pendente lite, for the security of all parties in interest, to be finally disposed of as the court may direct." In

treating the same subject on page 98 of the same volume, section 108, in discussing the right of the court to order a sale of the property the text says: "Jurisdiction to order sales by receivers of property in their hands resides in courts of equity, and is conducted according to the principles of equity practice. Under an order of court, a receiver may sell the real and personal property of the debtor on such terms as the court shall direct, but he cannot sell in the absence of such an order, nor sell upon terms in conflict with the order. Thus a receiver, directed to sell the assets of a bank, has no power to barter, trade or exchange such assets."

From thence forward the text proceeds to discuss the various grounds upon which a receiver may be appointed and an order of sale of the property in his hands might be made, all of which relates—not to the jurisdiction of the court over the subject matter, but to the right or authority of the court to render the particular questioned judgment. If jurisdiction exists but authority is exceeded, then the judgment is only an erroneous one and not a void one, since the court in that instance, in the exercise of acknowledged jurisdiction of the subject matter, misinterpreted its authority under the facts disclosed to render the particular judgment, and which, as said, made it only erroneous and not null and void.

Our interpretation of the word "jurisdiction" as herein presented is also supported by the text in 15 C. J. p. 723, and succeeding pages. On page 725 of that volume in defining it the text says that it consists in "the legal right by which judges exercise their authority. * * * the power or authority which is conferred upon a court * * * to hear and determine causes between parties and to carry the judgment into effect, * * * the power and authority conferred upon a court by the Constitution and laws to hear and determine causes between parties and to carry its judgments into effect * * *. The term (jurisdiction) imports authority to expound or to apply the laws, and excludes the idea of power to make the laws." See also 21 C. J. S., Courts, Section 15.

Were it not for the fact that the appointment of the receiver was with the consent of the defendant, and that it also consented to the judgment making such appointment, it might be questionable whether the order of appointment made in 1933 was free from error. But it having been agreed to and not appealed from by the de-

fendant, the property owner, constitutes water that has run over the dam and is now beyond redemption. The appointing order, as we have seen, directed the receiver to sell the property if later ordered by the court, which was done in the judgment appealed from which was rendered under facts similar in character and involving the same principle as held by us in the case of Wakenva Coal Co. v. Johnson, 234 Ky. 558, 562, 28 S. W. (2d) 737. Also the case of Kentucky Utilities Company v. Steenman, 283 Ky. 317, 141 S. W. (2d) 265, is authority for sustaining the appointment of a receiver—although exercised when the facts did not authorize it—when the appointment was agreed to. Other objections to the judgment appealed from are set forth in appellant's response, but they likewise become eliminated from the case for the reasons hereinbefore advanced, i. e., consent of all interested parties to the rendition of the judgment complained of by the court which had jurisdiction of the subject matter, although, if contested, might not have been authorized to render the particular judgment under consideration.

In addition to what we have said, this litigation in its essence is, after all, of the nature and character of an equity action to settle the affairs of the defendant corporation, in which character of action the authorities clearly hold that a sale of the property might be made by the court if necessary to preserve the interests of all parties interested in the property, including the creditors of its insolvent owner. We have not attempted herein to catalogue the character of cases in which receivers might be appointed, or by whom such applications might be made, since the passing of the water over the dam, for the reasons hereinbefore stated, eliminates the necessity for entering upon the discharge of that task. We, therefore, conclude that the appellant by complying with his bid will obtain complete title to the property covered by his bid insofar as all parties to the litigation are concerned; but, of course, the judgment would not bar the rghts of any incumbrancer in no wise connected with the litigation. There is nothing in the record to show the existence of any such claimants, and we assume that if there had been they would have been made parties.

Wherefore, for the reasons stated, the judgment is affirmed; the whole Court sitting.